ALSTON & BIRD LLP
    Charles W. Cox (Cal. Bar No. 162854)
333 S. Hope Street, 16ᵗʰ Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100
E-mail: charles.cox@alston.com

ALSTON & BIRD LLP
    Paul Tanck (pro hac vice to be submitted)
    Neal McLaughlin (pro hac vice to be submitted)
    Wade Perrin (pro hac vice to be submitted)
90 Park Avenue
New York, NY 10016
Telephone:   (212) 210-9400
Facsimile:    (212) 210-9444
E-mail: paul.tanck@alston.com
E-mail: neal.mclaughlin@alston.com
E-mail: wade.perrin@alston.com

*Counsel for Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. and CAB Enterprises, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V., a Mexican company, and CAB ENTERPRISES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MONARCAS CANDIES, a California corporation, and DOES 1-10,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. ("Sueros") and CAB Enterprises, Inc. ("CAB") (collectively "Plaintiffs"), by their attorneys and for their Complaint against Monarcas Candies ("Monarcas") and DOES 1-10 (together, with Monarcas, "Defendants"), allege and state as follows:

## NATURE OF THE ACTION

1.     This is an anti-confusion and brand protection action to stop the unlawful importation, distribution, and sale by Defendants of unauthorized and materially different versions of Plaintiffs' Electrolit® premium hydration beverage.  Plaintiffs bring this action for injunctive and monetary relief for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); California Trademark Dilution (Cal. Bus. & Prof. Code § 14247); Unfair Competition (Cal. Bus. Prof. Code § 17200 et seq.) and the common law; induced and contributory trademark infringement; and violations of common-law prohibitions against unjust enrichment.

2.     Electrolit® is wildly popular in the U.S., where it is consumed by millions of U.S. consumers annually.

3.     Unwitting U.S. consumers are being exposed to unlawful, mislabeled and unauthorized product being imported, distributed, advertised, offered for sale and sold by infringers and counterfeiters.

4.     Genuine product authorized for sale under the Electrolit® name in the United States is different than Electrolit that is sold in other countries, including Mexico. Ingredients and labels differ in ways that are important to consumers. Additionally, genuine Electrolit® product is also always distributed under strict quality control protocols by Plaintiffs, which cannot be verified when non-genuine products travel through the hands of infringing resellers.

5.      In contrast to plaintiff CAB, the exclusive authorized U.S. distributor of Electrolit®, Defendants do not distribute and sell genuine U.S. Electrolit®. Instead, Defendants offer to sell, sell and distribute to unsuspecting and confused U.S. consumers unauthorized Electrolit-branded products that are materially different than genuine U.S. Electrolit® ("Unauthorized Electrolit").

6.      Plaintiffs have suffered and continue to suffer irreparable harm from Defendants' actions.

7.      Defendants' activities are jeopardizing CAB's relations with its authorized sub-distributors. Defendants offer to sell and sell infringing Unauthorized Electrolit to customers in the U.S. at prices that undercut genuine Electrolit®. As a result of unauthorized sales and/or distribution of Electrolit-branded products, several of CAB's authorized sub-distributors have threatened to stop selling genuine Electrolit® sourced from CAB because these sub-distributors cannot compete against the low prices of Unauthorized Electrolit. Moreover, some sub-distributors—including ones located in California—already drastically reduced their orders of genuine U.S. Electrolit® from CAB, and a potential new distributor indicated that it would be unwilling to distribute genuine U.S. Electrolit® if the market is flooded with Unauthorized Electrolit. As a result, CAB's relationships with its sub-distributors and potential new distributors are being irreparably harmed, and Defendants' actions have prevented CAB from expanding its market.

8.      The low price at which Defendants sell Unauthorized Electrolit is also both tarnishing the reputation of Plaintiffs and Electrolit® as a high quality and premium rehydration product and is causing an unsustainable race to the bottom on pricing that impacts Plaintiffs' ability to price their product fairly. Worse, once price erosion caused by Defendants becomes prevalent, it will likely prove impossible as a practical matter for Plaintiffs to raise prices back to pre-erosion levels and re-solidify Plaintiffs' brand as a high quality and premium rehydration product if Defendants' infringement is not stopped.

9.     In addition, Defendants' actions are putting the health of U.S. consumers at risk. None of the unlawfully imported Unauthorized Electrolit products meet FDA requirements, including requirements governing label content, and they contain ingredients that are not present in genuine U.S. Electrolit®.  Moreover, some of these ingredients are not required to be identified on labels of the Unauthorized Electrolit in the countries where those products are intended to be sold.  Thus, even an English language translation of Unauthorized Electrolit labels would not identify all ingredients in those products.

10.     To stop this unlawful and potentially dangerous conduct, and to recover the damages caused by it, Plaintiffs bring this action for injunctive and monetary relief.

## THE PARTIES, JURISDICTION AND VENUE

11.     Plaintiff Sueros is a Mexican company with its principal place of business at Av. España No. 1840, Colonia Moderna, C.P. 44190, Guadalajara, Jalisco, Mexico. Sueros is the owner of the Electrolit trademarks (listed below) and trade dress associated with genuine U.S. Electrolit® described below.

12.     Plaintiff CAB is a Delaware corporation with its principal place of business at 3201 Allen Parkway, Suite 100, Houston, TX 77019. CAB is the exclusive licensee in the United States for the trademarks and trade dress associated with genuine U.S. Electrolit®, including the Electrolit Marks, described below (collectively the "Electrolit Marks and Trade Dress").

13.     Defendant Monarcas Candies is a California corporation that conducts business at its facility at 9740 Alburtis Avenue Santa Fe Springs, CA 90670.

14.     On information and belief, Monarcas used and uses the Electrolit Marks and Trade dress in commerce in connection with the sale or advertising of Unauthorized Electrolit without Plaintiffs' consent and knowingly induced and contributed to such use by others.

15.    For example, Monarcas uses Plaintiff's Electrolit Marks and Trade Dress on its website and social media posts in connection with the advertising, offer for sale and sale of Unauthorized Electrolit without Plaintiffs' consent:



(https://monarcascandies.com/producto/electrolit/)



(https://www.tiktok.com/@monarcascandies8/video/7281303913024769323).

16.    On information and belief, Monarcas committed and commits this infringement willfully and in bad faith, with actual knowledge of the infringing activity or at least with objective recklessness or willful blindness that its acts constituted, induced or contributed to infringement.

17.    For example, at least once, Monarcas has been explicitly informed that the Unauthorized Electrolit that it sells is "contraband" and "not FDA approved for USA sales."



(https://www.instagram.com/p/Cxa1yxrx5Vs/)

18.    This Court has jurisdiction because this is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq. (the Lanham Act), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. This Court also has jurisdiction for the claims made under California statutory and common law in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

19.    This Court has personal jurisdiction of Defendants because, on information and belief, Defendants reside and/or have a principal place of business in the State of California and within this judicial district. Furthermore, on information and belief,

Defendants have deliberately engaged in significant and continuous business activities within California. Accordingly, Plaintiffs have established minimum contacts with the Central District of California.

20.    For example, social media posts by Monarcas show a large number of pallets of Unauthorized Electrolit being unloaded, divided, re-packaged and stored at Monarcas's Santa Fe Springs, California warehouse.



(https://www.instagram.com/p/Cxf-3_wL2do/)



(https://www.youtube.com/watch?v=AuTCyI-jLNA)



(*id*).

21.     In the social media posts, pallets of Unauthorized Electrolit (characterized by brown carboard boxes with blue stripes at the bottom) are shown as having been wrapped in clear plastic film and are sequentially numbered from 1 through 1000.



22.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this district, and under 28 U.S.C. § 1391(c), because Defendants are subject to this Court's personal jurisdiction for purposes of this case.

### FACTUAL BACKGROUND

***Pisa and Genuine U.S. Electrolit***

23.     Electrolit® was originally developed by Laboratorios Pisa, S.A. de C.V. ("Pisa") as a solution for dehydration in children, a crucial need during a wave of cholera striking Mexico at the time. The photograph below shows early Electrolit® product.



24.     Over the years, Electrolit® has proven to be a wildly successful product among children and adults. In 2014, CAB was formed in the United States and was appointed the exclusive authorized distributor in the United States for Electrolit® product. In connection therewith, CAB was granted a license to the trademarks, copyrights and trade dress associated with genuine U.S. Electrolit® described below and was tasked with translating the overwhelming success of Electrolit® in Mexico into a similar dominance in the U.S. market.

25.     CAB is responsible for the marketing, labelling, and distribution of Electrolit® products in the United States.

26.     CAB takes that responsibility seriously by ensuring that the contents, packaging, and labelling of Electrolit® in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers.  Those practices correspond with the preference of U.S. customers, who consider products to be higher quality when they comply with U.S. laws and regulations, are formulated to match U.S. consumer tastes, and feature the post-sale services that CAB provides.  CAB continues to monitor the market by receiving consumer inquiries, tracking and investigating complaints, addressing spoilage issues, and performing necessary actions in response to such issues, including by conducting recalls or initiating legal proceedings.  These activities have ensured continued goodwill for the Electrolit® trademark and the investment that CAB and its sub-distributors have made in creating consumer demand for Electrolit®.

27.    Today, CAB distributes genuine U.S. Electrolit® to over 30,000 accounts in the United States. Genuine U.S. Electrolit® is sold to consumers through several channels, including online through retailers such as Amazon as well as through supermarkets, convenience stores and all grocery store formats.

28.    Genuine U.S. Electrolit® is currently sold in several flavors, including Orange, Fruit Punch, Grape, Strawberry Kiwi, Berry Bliss, Strawberry, Lemon-Lime, Hibiscus/Jamaica, Guava, Coconut and Apple. All genuine U.S. Electrolit® is manufactured and packaged in Mexico by Pisa, who then exports it to CAB in the U.S. Genuine U.S. Electrolit® is typically sold to consumers as a single bottle, as a box of six bottles and in cases of 12 bottles. Genuine U.S. Electrolit® is also sold in larger quantities, such as pallets and half pallets of product.

29.    CAB sells Electrolit® directly to retailers and through a network of authorized sub-distributors that distribute Electrolit® through the United States, including in California.  By carefully evaluating its authorized sub-distributors, CAB ensures that its products are distributed by business partners that are similarly invested in developing and safeguarding the goodwill associated with Electrolit®.   If an authorized sub-distributor fails to provide the high-quality services that CAB expects, CAB may take corrective measures.

30.    Sueros is the owner of the following "Electrolit" trademarks (U.S. Reg. Nos. 4,222,726; 4,833,885; 4,717,350; 4,717,232) and CAB is the exclusive licensee in the United States of these registered trademarks (collectively, the "Electrolit Marks"), one or more of which appear on packaging and advertisements for all genuine U.S. Electrolit® products:

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|---|---|---|---|
|  | 4222726 | Oct. 9, 2012 | *Class 5:* Electrolyte replacement solution for oral rehydration.<br><br>*Class 32:* Oral rehydration beverages, namely, sports drinks. |

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|---|---|---|---|
| "ELECTROLIT" | 4833885 | Oct. 13, 2015 | **Class 5:** Pharmaceutical products, namely, electrolyte replacement solutions; veterinary products, namely, dog, horse, pig, cat, bird, and ruminant food, bacterial and bacteriological preparations for veterinary use, chemical reagents for veterinary purposes, enzymes for veterinary purposes, diagnostic preparations for veterinary purposes, veterinary vaccines; hygienic products, namely, skin cleansing solutions for medical use; dietetic substances for medical use, namely, diet pills, diet capsules, and diet drinks; baby food; poultices; wound dressings; dental poultices; dental mold poultices; disinfectants for home use; products for the destruction of harmful animals, namely, insecticides and pesticides; fungicides; herbicides.<br><br>**Class 32:** Beers; mineral waters; carbonated beverages; non-alcoholic beverages, namely, water, flavored water; fruit beverages and juices; syrups for making beverages. |
|  | 4717350 | Apr. 7, 2015 | **Class 5:** Electrolyte replacement solutions for oral rehydration.<br><br>**Class 32:** Oral rehydration beverages, namely, sports drinks containing electrolytes. |

11
COMPLAINT

| Mark | U.S. Reg. No. | Reg. Date | Relevant Goods |
|---|---|---|---|
| *Electrolit* | 4717232 | Apr. 7, 2015 | ***Class 5:*** Electrolyte replacement solutions for oral rehydration.<br><br>***Class 32:*** Oral rehydration beverages, namely, sports drinks containing electrolytes. |

31.    True and correct copies of the registrations for the Electrolit Marks are attached hereto as **Exhibit 1**.

32.    Since long prior to Defendants' acts complained of herein and through the present, Pisa (and/or recently formed Sueros) and/or CAB have made continuous use of the Electrolit Marks in connection with genuine U.S. Electrolit® products and plan to do so in the future.

33.    The Electrolit Mark registrations are valid, subsisting and incontestable and constitute conclusive evidence of Plaintiffs' exclusive right to use the Electrolit Marks for the goods specified in the registrations. 15 U.S.C. §§ 1065, 1115(b).

34.    Plaintiffs use distinctive packaging (the "Electrolit Trade Dress") to distinguish its genuine U.S. Electrolit® products in the marketplace. Sueros owns, and CAB is the exclusive licensee in the United States with respect to, the Electrolit Trade Dress, which consists of, but is not limited to the packaging illustrated below:



35.     Plaintiffs have used the Electrolit Trade Dress pictured above, or in a similar fashion, on genuine U.S. Electrolit® product since at least as early as 2014 and through the present date. Plaintiffs are currently using the Electrolit Trade Dress in commerce and in connection with their sale of genuine U.S. Electrolit® and plan to continue such use in the future.

36.     The Electrolit Trade Dress is arbitrary, non-functional and distinctive.

37.     The Electrolit Marks and Electrolit Trade Dress have been extensively and continuously used by Plaintiffs and are inherently distinctive and/or have become distinctive through the acquisition of secondary meaning.

38.     Since the formation of CAB in 2014, tens of millions of dollars have been spent in the United States to advertise and promote genuine U.S. Electrolit®. The Electrolit Marks and Electrolit Trade Dress is prominently displayed in Plaintiffs' advertising and promotional materials.

39.     Plaintiffs advertise and promote genuine U.S. Electrolit® through various means, including electronic media, print media, promotional and point of sale materials, presence at live events and through various social media channels, including Facebook and Instagram.

40.     CAB's sale of Electrolit® in the United States has been tremendously successful because of its efforts to ensure the high quality of Electrolit®, as well as its substantial investment in the marketing and promotion of Electrolit® to customers.

41.     The Electrolit® Marks and Trade Dress are inherently distinctive, and as a result of Plaintiffs' extensive sales, promotion and advertising of genuine U.S. Electrolit®, the Electrolit Marks and Trade Dress have become famous among the consuming public of California and the United States and represent valuable goodwill to Plaintiffs. The Electrolit Marks and Trade Dress are also famous among the general consuming public in California.

42.     Pisa's use of the Electrolit Marks dates back to the 1950s and the Electrolit Marks have been in continuous, exclusive use since that time. CAB began using the

Electrolit Marks and Trade Dress in the U.S. in 2014 and since then has spent tens of millions of dollars on advertising and promotion of the Electrolit Marks and Trade Dress among the general consuming public in the U.S.

43.    As a result of Plaintiffs' efforts, in addition to the popularity of the Electrolit product itself, the Electrolit Marks and Trade Dress have become household names among the general consuming public in the U.S. and California. The exponential growth of sales of genuine U.S. Electrolit and total sales volume also evidence the fame of the Electrolit Marks and Trade Dress.

44.    In addition to genuine U.S. Electrolit®, other, different versions of Electrolit® are manufactured and sold abroad, but in the largest volume in Mexico and throughout Latin America. The various versions of Electrolit® sold internationally are customized to reflect differences in terms of government regulations, consumer preferences, and language, among other considerations.

45.    Common to every genuine Electrolit® product sold in the U.S. is the quality control standards established by Pisa, maintained by Sueros and contractually mandated by CAB and each of its sub-distributors that dictate the conditions for manufacture, distribution, storage and sale of genuine Electrolit® products throughout authorized supply chains.

46.    Sueros only authorizes genuine U.S. Electrolit® for sale in the United States, and only by CAB. All other versions of Electrolit® are not authorized to be sold in the United States ("Unauthorized Electrolit"). Likewise, genuine U.S. Electrolit® is not authorized to be sold in any other country.

### *Unauthorized Electrolit is Materially Different*

47.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit in many respects. These differences are material to consumers.

48.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit at least in that the formula of ingredients in genuine U.S. Electrolit® is different from any other Electrolit® authorized to be sold anywhere else in the world. For example, Unauthorized

Electrolit contains artificial flavors and additives not found in Genuine U.S. Electrolit®. This difference is material to consumers.

49.    Genuine U.S. Electrolit® and its label is registered as a beverage with the U.S. Food and Drug Administration ("FDA"), but Unauthorized Electrolit is not. This difference is material to consumers.

50.    Genuine U.S. Electrolit® is different from Unauthorized Electrolit at least in that the labelling of genuine U.S. Electrolit® is different from any other Electrolit® authorized to be sold anywhere else in the world. These differences are material to consumers. As one example, the label of Genuine U.S. Electrolit® contains a "Nutrition Facts" label in compliance with U.S. Food and Drug Administration ("FDA") requirements. No other Electrolit® authorized to be sold anywhere else in the world contains such a "Nutrition Facts" label. This difference is material to consumers.

51.    As another example, the label of genuine U.S. Electrolit® is written in the English language, whereas the label of all other Electrolit® products authorized to be sold outside of the United States are labelled in the Spanish language. One aspect of this difference is that the freshness date printed on the product of genuine U.S. Electrolit® is identified with the English words "USE BY," whereas Unauthorized Electrolit contains no such "USE BY" identification. These differences are material to consumers.

52.    As another example, the units of measure used on the label of genuine U.S. Electrolit® are in the imperial system that U.S. consumers recognize and that is required by some U.S. state laws, whereas the label of all other Electrolit® products authorized to be sold outside of the United States use measurements in the metric system, which many U.S. consumers are unfamiliar with. This difference is material to consumers.

53.    As another example, the names of the flavors of genuine U.S. Electrolit® that appear on the product labels are unique to genuine U.S. Electrolit® and do not appear on Unauthorized Electrolit. Relatedly, the flavors of Unauthorized Electrolit are not authorized for sale in the United States by Sueros, CAB or the FDA and do not

appear in the English language on the labels of Unauthorized Electrolit. This difference is material to consumers.

54.    As another example, the label of genuine U.S. Electrolit® identifies a U.S. toll free telephone number for consumers to call in case of questions or concerns, whereas the label of all other Electrolit® products authorized to be sold outside of the United States do not identify such a U.S. toll free number. This difference is material to consumers.

55.    As another example, the label of genuine U.S. Electrolit® reports different caloric values than does the label of all other Electrolit® products authorized to be sold outside of the United States. This difference is material to consumers.

56.    As another example, the label of Genuine U.S. Electrolit® contains bottle deposit refund information relevant to and required by certain U.S. states. No other Electrolit® authorized to be sold anywhere else in the world contains such bottle deposit refund information on its label. This difference is material to consumers.

57.    As another example, the label of all Unauthorized Electrolit products contains a medical claim that the product prevents or treats dehydration. For example, the label of Electrolit® products authorized to be sold in Mexico contains the following language: "Solución esterilizada de electrolitos orales indicada para prevenir o tratar la deshidratación." However, the label of genuine U.S. Electrolit® does not contain such a claim, nor could it under FDA regulations. This difference is material to consumers.

58.    As another example, the label of all Unauthorized Electrolit products contains a medical indication for use of the product to prevent and treat certain medical conditions. For example, the label of Electrolit® products authorized to be sold in Mexico contains the following language: "INDICACIONES: Electrolit® es una solución rehidrante para la prevención y el tratamiento del desequilibrio hidroelectrolítico ocasionado por el exceso de calor, desgaste físico intense, insolación, resaca, vómito y/o diarrea. Electrolit® además de proporcinar glucosa, previene o trata la deshidratación mediante la reposición de líquidos y electrólitos contenidos en su

fórmula." However, the label of genuine U.S. Electrolit® does not contain such an indication, nor could it under FDA regulations. This difference is material to consumers.

59.    As another example, the label of genuine U.S. Electrolit® contains the statement "SWEETENED WITH NATURAL Glucose," whereas the labels of all other Electrolit® products authorized to be sold outside of the United States do not contain such a statement. This difference is material to consumers.

60.    As another example, the label of genuine U.S. Electrolit® contains the statement "NO PRESERVATIVES," whereas the labels of all other Electrolit® products authorized to be sold outside of the United States do not contain such a statement. This difference is material to consumers.

61.    As another example, the label of genuine U.S. Electrolit® contains the statement "GLUTEN free," whereas the labels of all other Electrolit® products authorized to be sold outside of the United States do not contain such a statement. This difference is material to consumers.

62.    As another example, the label of genuine U.S. Electrolit® contains a listing of the ingredients in the product, whereas the labels of all other Electrolit® products authorized to be sold outside of the United States do not contain such a listing. This difference is material to consumers.

63.    In addition, the pricing of genuine U.S. Electrolit® is different from any other Electrolit® authorized to be sold anywhere else in the world. This difference is material to consumers.

64.    Consumers consider each of these differences between genuine U.S. Electrolit® and Unauthorized Electrolit (collectively the "Material Differences") to be important to a decision about whether to purchase the products yet are unaware that the Unauthorized Electrolit products lack the features only present in genuine U.S. Electrolit®.

65.    Based on "gold standard" expert survey data, one or more of these Material Differences have been found by a Federal court to be material to consumers' purchasing

decisions. *Sueros y Bebidas Rehidratantes, S.A. de C.V. v. Indus. Enters., LLC*, No. H-22-1304, 2023 U.S. Dist. LEXIS 156155, at *2 (S.D. Tex. Sep. 5, 2023).

66.    The Unauthorized Electrolit imported, advertised, distributed, offered for sale and/or sold by Defendant lacks one or more of these Material Differences.

67.    Plaintiffs do not sell, authorize for sale or cause to be sold any nonconforming products that lack any of the Material Differences within the United States. In fact, as will be discussed below, Plaintiffs actively police the market to search for and remove nonconforming products that lack the Material Differences such as the Unauthorized Electrolit sold by unauthorized resellers including Defendants.

### Defendants and Their Unlawful Conduct

68.    After learning of Defendants' unlawful actions and their harmful effects, Plaintiffs engaged in reasonable efforts to further investigate and curtail such conduct.

69.    In addition to the Defendant identified by name herein, on information and belief, additional persons and entities whose identities are presently unknown are involved in the manufacture, distribution and sale of unauthorized and/or counterfeit Electrolit®. Plaintiffs intend to amend this pleading to identify these additional persons and entities by name as their identities are revealed during the course of discovery.

### Harms Caused by Defendant's Actions

70.    Plaintiffs have suffered and continue to suffer irreparable harm from Defendant's actions.

71.    First, Defendants' activities jeopardize CAB's relations with its authorized sub-distributors. CAB has invested significant time and capital developing its relationships with its authorized sub-distributors. Those relationships are reciprocal—CAB asks a great deal from its authorized sub-distributors in terms of marketing, monitoring, sales reporting, quality control and more, and in exchange offers important benefits including, above all, the knowledge that its authorized distributor cannot be underbid on genuine Electrolit®, which is only authorized for sale by CAB. CAB's authorized sub-distributors are less likely to accept this arrangement—or may be

tempted to cut costs by skimping on quality-control procedures critical to the Electrolit® brand—if Defendants are repeatedly able to obtain lower-cost but confusingly similar Unauthorized Goods and underbid authorized sub-distributors on supply contracts. Put simply, on information and belief, Defendants sell Unauthorized Electrolit to U.S. wholesalers at prices below what CAB is able to sell it at, and in other instances sells Unauthorized Electrolit to retailers at prices below what CAB's authorized sub-distributors sell it for. As a result, several of CAB's authorized sub-distributors have stated that they may stop selling genuine Electrolit® purchased from CAB because these sub-distributors cannot compete against the low prices offered by infringing gray market resellers of Unauthorized Electrolit such as Defendants. As a result, CAB's ability to expand its market will be severely impacted.

72. Second, Defendants' activities jeopardize Plaintiffs' delicate pricing mechanisms. Electrolit is marketed and sold to an enormous variety of customers in markets all over the world. This heterogeneity requires non-uniform pricing in order to compete in particularly cost-sensitive markets. Defendants, by illicitly importing Unauthorized Electrolit into the U.S. and marketing it against Plaintiff's genuine Electrolit® product force Plaintiffs into an unsustainable race to the bottom and jeopardize their ability to price their products fairly. Worse, once such price erosion becomes prevalent, it will prove impossible as a practical matter to raise prices back to pre-erosion levels, leading to diminished profits for Plaintiffs even after Defendants' infringement stops.

73. Most importantly, Defendants' sales of Unauthorized Electrolit jeopardizes their customers' health. Defendants deliberately lead customers to believe that the Unauthorized Electrolit they sell is the same as the genuine Electrolit® that is formulated for the U.S. market, even though Unauthorized Electrolit contains a different formulation that could pose health risks for unsuspecting U.S. consumers. Additionally, Defendants' acquisition and sale of Unauthorized Electrolit hinders Plaintiffs' ability to track its products, thereby potentially endangering the public by preventing Plaintiffs

from resolving quality problems and recalling defective products. As Defendants have deliberately marketed its Unauthorized Electrolit in a misleading fashion, customers would be led to believe that Plaintiffs actions—rather than Defendants' acquisition, storage, and shipping of materially different products—led to the defect. This would hugely jeopardize Plaintiffs' commercial goodwill and brand reputation, and causes irreparable harm for which there is no adequate remedy at law.

74.    CAB also loses direct revenue every time a bottle of Unauthorized Electrolit is sold by Defendants in the U.S. in lieu of a bottle of genuine Electrolit® that CAB would have sold but for the Defendants' actions.

75.    CAB is also facing pressure from its authorized sub-distributors to sell genuine Electrolit® at lower prices so that the authorized sub-distributors can compete with the lower prices offered by infringing unauthorized resellers such as Defendants' for Unauthorized Electrolit.

76.    Moreover, CAB has been forced to expend a significant amount of money to combat the flood of Unauthorized Electrolit that has appeared on U.S. store shelves. Plaintiffs have previously engaged in similar activities to police the use of the Electrolit Marks and Trade Dress. For example, over the past several years CAB has monitored complaints and tips regarding the sale of Unauthorized Electrolit by retailers and wholesalers and engaged counsel to send cease and desist letters to these infringers to stop the spread of these infringing—and in many cases counterfeit—products.

## **COUNT I – FEDERAL TRADEMARK INFRINGEMENT**

### **(15 U.S.C. § 1114)**

### **(Against All Defendants)**

77.    Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

78.    As alleged more fully herein, the USPTO has granted federal trademark registrations for the trademarks consisting of or incorporating the Electrolit Marks, which are owned by Sueros. CAB is the exclusive licensee of the Electrolit Marks in

the U.S.

79.     Defendants' unauthorized sales, offers for sale, distribution or advertising of Unauthorized Electrolit containing the Electrolit Marks to unsuspecting consumers is a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

80.     Defendants' sale, offer for sale, distribution or advertising of Unauthorized Electrolit has created a substantial likelihood of confusion or caused mistake or deception in consumers' minds because the Unauthorized Electrolit is materially different from genuine U.S. Electrolit®.

81.     Defendants' unauthorized use of Electrolit Marks constitutes use in commerce, without the consent of Plaintiffs, of a reproduction, copy, or colorable imitation of the Electrolit Marks and Trade Dress in connection with the sale, offer for sale, distribution or advertising of products and/or services. Such use is likely to cause confusion or mistake, or to deceive customers, and therefore infringes the Electrolit Marks and Trade Dress, in violation of 15 U.S.C. § 1114(1).

82.     Defendants were informed that the Unauthorized Electrolit that it is offering for sale is "contraband" "not FDA approved for USA sales" and its actions constitute deliberate, knowing and willful infringement of Plaintiffs' rights in the Electrolit Marks and Trade Dress with bad faith intent to cause confusion and trade on Plaintiffs' goodwill.

83.     As a result of Defendants' continued sale or advertisement of Unauthorized Electrolit, Plaintiffs have suffered and will continue to suffer irreparable harm to their goodwill and reputation with their retail and end-consumer customers, at least as a result of the confusion about and dissatisfaction with the Unauthorized Electrolit.

84.     Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

85.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the Electrolit Marks and Trade Dress and other damages in an amount to be proved at trial.

86.     Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Unauthorized Electrolit, including, but not limited to, products intended for sale in Mexico, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT II – INDUCED AND CONTRIBUTORY TRADEMARK INFRINGEMENT

### (Against All Defendants)

87.     Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

88.     Defendants intentionally induced other parties to infringe the Electrolit Marks and Trade Dress.

89.     Defendants continued to supply their product to persons whom they knew or had reason to know were infringing the Electrolit Marks and Trade Dress.

90.     Defendants failed to take reasonable precautions against the occurrence of third parties' infringement of the Electrolit Marks and Trade Dress under circumstances in which the infringing conduct could reasonably be anticipated.

91.     Defendants' actions constitute contributory infringement of Plaintiffs' exclusive rights in the Electrolit Marks and Trade Dress.

92.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Electrolit Marks and Trade Dress and their reputation in the industry. Unless Defendant is restrained from further contributory infringement of the Electrolit Marks and Trade Dress, Plaintiffs will continue to be irreparably harmed.

93.     Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

94.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable Electrolit Marks and Trade Dress and other damages in an amount to be proved at trial.

95.     Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Unauthorized Electrolit, including, but not limited to, products intended for sale in Mexico, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT III – FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a)(1)(A))
### (Against All Defendants)

96.     Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

97.     In violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), Defendants, independently and in conspiracy with others, in connection with the Unauthorized Electrolit, used in commerce a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection or association with Plaintiffs as to the origin, sponsorship, or approval of Defendants' Unauthorized Electrolit by Plaintiffs.

98.     The purchasing public is likely to attribute to Plaintiffs, Defendants' use of the Electrolit Marks as a source of origin, sponsorship, approval and/or authorization for the products Defendants sell and, further, purchase products from Defendants in the

erroneous belief that Defendants are authorized by, associated with, sponsored by, or affiliated with Plaintiffs, when Defendants are not.

99. Defendants' actions have been conducted intentionally and willfully, with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high-quality reputation of Plaintiffs, and/or to improperly appropriate to themselves the valuable Electrolit Marks.

100. Defendants' unlawful conduct has deceived, and is likely to continue to deceive, a material segment of the consumers to whom Defendants have directed their marketing activities. Defendants' false and/or misleading statements are material in that they are likely to influence consumers to purchase products from Defendants and cause competitive and other commercial injuries to Plaintiffs. Defendants have made, and continue to make, false and/or misleading statements with the intent to cause confusion and mistake, or to deceive the public into believing that Defendants are authorized by, associated with, sponsored by, or affiliated with Plaintiffs, when Defendants are not. Plaintiffs have been damaged as a result.

101. As a result of Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, irreparable harm to its goodwill and reputation with both its customers and its authorized distributors.

102. Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

103. Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Unauthorized Electrolit, including, but not limited to, products intended for sale in Mexico, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT IV – TRADEMARK DILUTION

### (15 U.S.C. § 1125(c))

### (Against All Defendants)

104.   Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

105.   The Electrolit Marks are famous and distinctive, and are widely recognized by the general consuming public of the United States as a designation of source of genuine U.S. Electrolit®.

106.   The Electrolit Marks became famous source indicators for Electrolit products long before Defendant commenced its infringing activities.

107.   Defendants' acts as described herein began after the Electrolit Marks became famous and are likely to and have tarnished Plaintiffs' valuable business reputation and goodwill and are likely to blur the distinctiveness of the famous Electrolit Marks.

108.   Defendants' acts are likely to cause and have caused dilution by tarnishment and blurring of the famous Electrolit Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

109.   On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Unauthorized Electrolit in the United States have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the Electrolit Marks and with a bad faith intent to cause dilution of the Electrolit Marks.

110.   Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Unauthorized

Electrolit, including, but not limited to, products intended for sale in Mexico, for the Unauthorized Electrolit to be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, Defendants' profits, the costs of the action, reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## COUNT V – TRADEMARK DILUTION

### (Cal. Bus. & Prof. Code § 14247)

### (Against All Defendants)

111.    Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

112.    The acts complained of herein constitute trademark dilution in violation of California Trademark Dilution (Cal. Bus. & Prof. Code § 14247).

113.    The Electrolit Marks are famous and distinctive and are widely recognized by the public, including throughout California or in a geographic area in this state as a designation of source of the of the United States as a designation of source of genuine U.S. Electrolit®.

114.    Defendants' acts as described herein began after the Electrolit Marks became famous and are likely to and have tarnished Plaintiffs' valuable business reputation and goodwill and are likely to blur the distinctiveness of the famous Electrolit Marks.

115.    Defendants' acts have diluted the Electrolit Mark in California and the United States by blurring their association with CAB and reducing purchasers' ability to identify and distinguish goods intended for different markets.

116.    On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Unauthorized Electrolit have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the Electrolit Marks and with a bad faith willful intent to cause dilution of the Electrolit Marks.

117.    Defendants' acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs

are without an adequate remedy at law. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendant from selling any Unauthorized Electrolit, including, but not limited to, products intended for sale only in Mexico, as well as to Defendants' profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided under the law.

## COUNT VI – UNFAIR COMPETITION

### (Cal. Bus. Prof. Code § 17200 et seq.)

### (Against All Defendants)

118. Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

119. Defendants have violated 15 U.S.C. § 1114 and California Business & Professions Code § 14245 by using the Electrolit Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner likely to cause confusion, mistake, or deception, without consent of the owner.

120. Defendants have also violated 15 U.S.C. § 1125(a) by using the Electrolit Marks in commerce in a manner likely to cause confusion, mistake, and deception as to the connection between Defendants and Plaintiffs and as to the origin, sponsorship, or approval of Defendants' products for sale in the United States by Plaintiffs.

121. Defendants have also violated 15 U.S.C. § 1125(c) and California Business & Professions Code § 14247 by using the Electrolit Marks in commerce in a manner likely to cause dilution by blurring and by tarnishment of the Electrolit Marks.

122. This conduct, together with the Defendants' other acts alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices under California Business and Professions Code § 17200, because such acts are forbidden by various state and federal laws and are unscrupulous, unfair, and injurious to Plaintiffs. Defendants' acts have irreparably damaged Plaintiffs and will continue to do so unless

restrained by this Court, and Plaintiffs are without an adequate remedy at law.

123.   In further violation of Cal. Bus. Prof. Code § 17200 et seq. Defendants engaged in unfair competition by engaging in false, misleading or deceptive acts or practices in connection with their sale, offer for sale, distribution or advertising of Unauthorized Electrolit.

124.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Electrolit Marks and Trade Dress and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

125.   Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

126.   As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Electrolit Marks and Trade Dress and other damages in an amount to be proved at trial.

## COUNT VII – COMMON LAW TRADEMARK INFRINGEMENT

### (Against All Defendants)

127.   Plaintiffs hereby restate and re-alleges the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

128.   The acts complained of herein constitute trademark infringement in violation of the common law of the State of California and elsewhere.

129.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the Electrolit Marks and Trade Dress and other damages in an amount to be proved at trial.

130.   Plaintiffs are entitled to, among other things, an order enjoining and restraining Defendants from selling any Unauthorized Electrolit, including, but not limited to, products intended for sale only in Mexico, as well as to Defendants' profits, Plaintiff's reasonable attorneys' fees and any other remedies provided for under the law.

## COUNT VIII – COMMON LAW UNFAIR COMPETITION

### (Against All Defendants)

131.  Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

132.  The acts complained of herein constitute unfair competition in violation of the common law of the State of California and elsewhere.

133.  As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered irreparable harm to the valuable Electrolit Marks and Trade Dress and their reputation in the industry. Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

134.  Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

135.  As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered damages, including lost profits and damages to the valuable Electrolit Marks and Trade Dress and other damages in an amount to be proved at trial.

## COUNT IX – UNJUST ENRICHMENT

### (Against All Defendants)

136.  Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporate them by reference as if fully set forth herein.

137.  By selling the Unauthorized Electrolit bearing Plaintiffs' valuable trademarks, Defendants have been unjustly enriched to Plaintiffs' detriment in violation of the common law of California and elsewhere.

138.  Under principles of equity, Plaintiffs are entitled to damages, restitution and/or disgorgement of Defendants' ill-gotten gains.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.    For judgment that:

1.    Defendant has engaged in Federal Trademark Infringement in violation of the Lanham Act (15 U.S.C. § 1114);

2.    Defendant has engaged in Induced and Contributory Trademark Infringement;

3.    Defendant has engaged in False Designation of Origin in violation of 15 U.S.C. § 1125(a)(1)(A);

4.    Defendant has engaged in Trademark Dilution in violation of 15 U.S.C. § 1125(c);

5.    Defendant has engaged in Trademark Dilution in violation of Cal. Bus. & Prof. Code § 14247;

6.    Defendant has engaged in Unfair Competition in violation of Cal. Bus. Prof. Code § 17200 et seq;

7.    Defendant has engaged in Trademark Infringement in violation of the common law of the State of California;

8.    Defendant has engaged in Unfair Competition in violation of the common law of the State of California; and

9.    Defendant has engaged in Unjust Enrichment in violation of the common law of the State of California.

B.    For preliminary and permanent injunctive relief restraining and enjoining Defendants and all of its agents, servants, employees, successors and assigns, and all persons in active concert or participation with Defendant (or its agents) from:

1.    Selling, offering to sell, transporting, distributing, marketing, advertising, importing, or purchasing Electrolit branded products that are not authorized for sale in the United States market, including but not limited to the Unauthorized Electrolit;

2.      Using any Electrolit Mark and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols or designs, in connection with its business, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify Defendant's goods;

3.      Otherwise infringing the Electrolit Marks;

4.      Representing by any means whatsoever, directly or indirectly, that any products or services offered or provided by Defendant are offered or authorized by Plaintiffs, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of such products or as to any authorization, sponsorship, approval, or affiliation relationship between Defendant and Plaintiffs;

5.      Affixing, applying, annexing, or using in connection with the manufacture, distribution, marketing, advertising, packaging, sale, and/or offering for sale or other use of any products, a false description or representation, including without limitation words, symbols, photographs, or product representations similar to those used by Plaintiffs, tending to falsely describe or represent such as being those of Plaintiffs;

6.      Unfairly competing with Plaintiffs in any manner whatsoever or otherwise injuring their business reputation in the manner complained of herein;

7.      From diluting any of the Electrolit Marks;

8.      From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (B)(1) through (B)(7) above; and

9.      Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in sub-paragraphs (B)(1) through (B)(8) above.

C.    An order, under 15 U.S.C. §§ 1116 and 1118, requiring Defendants (including its employees and agents) to deliver to Plaintiffs (or allow Plaintiffs to pick up), or requiring to be destroyed, all Unauthorized Electrolit that is in Defendants' possession, custody, or control.

D.    An order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with this Court and serve upon Plaintiffs within 30 days after the entry of a preliminary or permanent injunction a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with the injunction and this Prayer for Relief.

E.    An order:

1.    Awarding Plaintiffs all profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' sales of Unauthorized Electrolit, and damages, to be determined, that Plaintiffs have suffered as a result of Defendant's sales and marketing of Unauthorized Electrolit (including, but not limited to, Plaintiffs' lost profits, price erosion, and damages awarded pursuant to 15 U.S.C. § 1117, trebled;

2.    Awarding Plaintiffs' attorneys' fees and costs;

3.    Awarding Plaintiffs damages, attorneys' fees, and costs to the fullest extent provided for by the United States statute and the common law of California, including exemplary and punitive damages;

4.    Awarding Plaintiffs pre-judgment and post-judgment interest; and

5.    Awarding Plaintiffs such other and further relief as this Court deems just and equitable.

COMPLAINT

## **DEMAND FOR A JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  October 2, 2023                      Respectfully submitted,

ALSTON & BIRD LLP


/s/ Charles W. Cox
Charles W. Cox
*Counsel for Plaintiffs*
*Sueros & Bebidas Rehidratantes, S.A. de C.V.*
*and CAB nterprises, Inc*