Milord A. Keshishian, SBN 197835
milord@milordlaw.com
Shirley Matcha, SBN 354003
shirley@milordlaw.com
**MILORD LAW GROUP, P.C.**
333 South Hope Street, Suite 4025
Los Angeles, California 90071
Tel: (310) 226-7878

Attorneys for Defendant
MONARCAS CANDIES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V., a Mexican company, and CAB ENTERPRISES, INC., a Delaware corporation;<br><br>      Plaintiff,<br><br>      vs.<br><br>MONARCAS CANDIES, a California corporation, and DOES 1-10;<br><br>      Defendants. | CASE NO.:  2:23-cv-08282 DSF (BFMx)<br><br>*Before The Honorable Dales S. Fischer*<br><br>**MONARCAS CANDIES' NOTICE OF MOTION AND MOTION TO SET ASIDE THE JUDGMENT**<br><br>Date:      March 31, 2025<br>Time:     1:30 PM<br>Location:  350 W. 1st St.<br>           Los Angeles, CA 90012<br>           Courtroom 7D<br><br>Complaint Filed: October 02, 2023 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 31, 2025, at 8:30 a.m. or as soon thereafter as the Motion may be heard, in Courtroom 7D of the First Street Courthouse of the above Court located at 350 W. 1st Street Los Angeles, California 90012, defendant Monarcas Candies ("Defendant" or "Monarcas") will and hereby does move this Court for an order relieving Monarcas from the Court's permanent injunction and judgment (Dkt. 41) in favor of Plaintiffs, and from its orders granting Plaintiffs' Motion for Default Judgment (Dkt. 35). Defendant will and does also hereby move the Court to recall and quash its April 3, 2024 writs of execution on the judgment (Dkt. 56), and any later writs issued between the filing of this Motion and the Court's ruling on it.

This Motion is made under the Federal Rules of Civil Procedure, Rule 60(b)(1) & (6) and under the Court's inherent equitable power over its processes. Monarcas asks the Court to set aside the orders and vacate the judgments, and to quash any writs of execution issued on the judgment. The record on this Motion demonstrates that Defendant's prior counsel Gary S. Saunders, Sr. acted, and failed to act, with gross negligence that rises to the level of excusable neglect, including abandoning Monarcas' defense. Saunder's gross negligence was also an extraordinary circumstance that prevented Defendants from timely defending themselves at critical moments, including his failure to timely file an answer to the complaint.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 that took place on February 18, 2025, wherein Plaintiffs' counsel indicated that they would oppos this Motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, and the Declarations of Milord Keshishian ("Keshishian Decl.") and Manuel Vazquez ("Vazquez Decl.") filed concurrently herewith, all of the pleadings, files and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

1

2 Dated: February 25, 2025                    **MILORD LAW GROUP, P.C.**

3                                            By: /s/ Milord A. Keshishian

4                                            Milord A. Keshishian

5                                            Attorneys for Defendant

6                                            MONARCAS CANDIES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………...iii

TABLE OF AUTHORITIES ......................................................................iv

I.    Introduction .........................................................................................1

II.   Statement of Facts ..............................................................................1

III.  Procedural Posture .............................................................................7

IV.   Rule 60(b) affords Monarcas the relief it seeks. ...............................7

    A.    Monarcas was not culpable because of Saunders' gross negligence, deceit, and abandonment.................................................................................8

    B.    Monarcas has meritorious defenses. .........................................10

    C.    Plaintiffs will not be prejudiced by setting aside the default judgment.......13

    D.    This application is timely. ........................................................14

V.    Conclusion ........................................................................................15

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................**Page**

*Alan Neuman Prods., Inc. v. Albright,*
  862 F.2d 1388 (9th Cir. 1988) ...................................................................... 8

*Ashford v. Steuart,*
  657 F.2d 1053 (9th Cir. 1981) .................................................................... 14

*Atari Interactive, Inc. v. Rageon, Inc.,*
  No. 19-CV-10806-DSF-MAAX, 2020 WL 5802376 (C.D. Cal. Aug. 25, 2020) 8, 9, 10, 14

*Cmty. Dental Servs. v. Tani,*
  282 F.3d 1164 (9th Cir. 2002) ............................................................. 8, 9, 10

*Falk v. Allen,*
  739 F.2d 461 (9th Cir. 1984) ....................................................................... 8

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) ........................... 12

*Marx v. Loral Corp.,*
  87 F.3d 1049 (9th Cir. 1996) ..................................................................... 14

*Matarese v. LeFevre,*
  801 F.2d 98 (2d Cir. 1986) ........................................................................... 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  134 S. Ct. 1749 (2014).............................................................................. 12

*Sazerac Brands, LLC v. Allocated Liquor LLC,*
  No. 22-CV-08467-ODW-SKX, 2023 WL 4315542 (C.D. Cal. July 3, 2023) ............. 13

*Summit Tech., Inc. v. High-Line Med. Instruments Co.,*
  922 F. Supp. 299 (C.D. Cal. 1996) ...................................................... 10, 11

*Sunearth, Inc. v. Sun Earth Solar Power Co.,*
  839 F.3d 1179, 120 U.S.P.Q.2d 1386 (9th Cir. 2016)................................. 12

*U.S. v. Mesle,*
  615 F.3d 1085 (9th Cir. 2010) ............................................................. 8, 10

*United States v. Aguilar,*
  782 F.3d 1101 (9th Cir. 2015) ................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 11

Fed. R. Civ. P. 55(c) ..................................................................................... 7

Fed. R. Civ. P. 60(c) ................................................................................... 14

Fed. R. Civ. P. 60(c)(1)................................................................................. 8

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT

Federal Rule of Civil Procedure 60(b)..........................................................................7, 8, 9

Federal Rules of Civil Procedure, Rule 60(b)(1) & (6) ........................................................i

Rule 60(b)(6)...............................................................................................................9

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

On November 19, 2020, the State Bar of California unfortunately only suspended Gary S. Saunders, Defendant's counsel, instead of disbarring him for eight counts of gross negligence and malfeasance in services performed—or lack thereof—for numerous clients, finding "Saunders also abandoned [one client's] bankruptcy matter, performing no legal services for him."  Request for Judicial Notice ("RFJN"), Keshishian Decl. Ex. 1.  On December 18, 2024, the State Bar filed a new 17-count complaint against Saunders not only arising from gross negligence in representing several clients—once again charging for services he did not perform, but also practicing law without a license during his first suspension period. *Id*. Ex. 2.

Had the State Bar disbarred Saunders, Monarcas would not have been victimized by Saunders' gross negligence and abandonment resulting in the devastating default judgment entered without Monarcas' knowledge.  Saunders continued to falsely assure Monarcas that the case was proceeding normally while concealing his failure to file a "demurrer" as contracted, timely filing an answer, and an opposition to the motions for preliminary injunction, default judgment, and attorneys' fees.  Saunders failed to disclose that a default judgment was entered against Monarcas arising from Saunders' late answer but had the gall to charge Monarcas to file a defective motion to set aside the default months after its entry.  Only recently did Monarcas discover the gravity of the situation that was hidden by Saunders' deception.  But Monarcas was snake-bitten by the second counsel it hired, William Romaine, to file a motion to set aside the default judgment.  Romaine also failed to perform despite deceptively informing Monarcas that the motion would be immediately filed.  But Romaine delayed the filing until he passed away in January 2025 and cannot be held to account for his gross negligence.

### II.    Statement of Facts

On October 2, 2023, Plaintiff filed this case and served Monarcas on October 11,

2023.  Dkt. 21-4.  Neither Monarcas nor its principals had ever been sued before and wished to immediately respond and defend.  Vazquez Decl. ¶ 3.  English is a second language for Vazquez and Eduardo Lopez does not speak English.  *Id*. ¶ 5.  Vazquez was referred to Gary S. Saunders, Esq., who represented himself as a trademark law expert, and he and Lopez travelled to Saunders' office to meet in person on October 17, 2023.  *Id*. ¶ 6.  Saunders advised that Monarcas would need to file a "demurrer" against the complaint, the temporary restraining order, and the preliminary injunction, which would dismiss the case.  *Id*. ¶ 11.  Neither Vazquez nor Lopez knew what a demurrer was at the time and accepted Saunders' advice and signed the fee agreement the same day.  *Id*. ¶¶ 4, 12, Exs. A and B.  Monarcas wired the $27,000 retainer plus $495 court filing fee on October 18, 2023.  *Id*. ¶ 13, Ex. C.  Saunders' office then set up a litigation portal on www.mycase.com for Monarcas to upload any documents related to the case.  *Id*. ¶ 14.  Monarcas uploaded the Court's Temporary Restraining Order on or about October 19, 2023, and called Saunders' office asking for the meaning of the order and what was required.  *Id*. ¶ 15.  Vasili Papas, who Monarcas was led to believe was Saunders' associate attorney—when he was not, informed Vazquez it was normal and it would be addressed in the demurrer.  *Id*. ¶ 16.

The extent of Saunders' misconduct is unknown because he has refused to turn over the case file, including communications with Plaintiffs' counsel, despite numerous written and telephonic requests.  Keshishian Decl. ¶ 3.  Based on documents in the record, on October 24, 2023, Saunders' office emailed Plaintiffs' counsel requesting an extension of time to respond to the complaint, miscalculating the due date based on the state court 30-day rule, and stating that if a stipulation for an extension of time was necessary in federal court, Saunders would provide same that day.  Dkt. 35-5.  Plaintiffs' counsel agreed to the extension of time to respond, but it appears that Saunders never sent the stipulation and one does not appear in the record.  *Id*.

On November 6, 2023, Plaintiffs' counsel served Saunders with (1) Plaintiffs' Reply Statement Pursuant to Order Entering Temporary Restraining Order, (2) Cab

Enterprises, Inc.'s First Set of Requests for Admission, (3) First Set of Requests for Production, and (4) First Set of Interrogatories.  Dkt. 35-6.  None of these documents or draft responses were ever forwarded by Saunders or his office to Monarcas.  Vazquez Decl. ¶ 17.  On November 17, 2023, Plaintiffs' counsel sent a meet and confer letter regarding an anticipated motion for contempt of the temporary restraining order and also requesting to meet and confer regarding the responses to discovery.  Dkt. 35-8. Saunders' office did not forward the correspondence to Monarcas or notify Monarcas that an injunction was in place, let alone Plaintiffs' intention to file a motion to hold Monarcas in contempt.  Vazquez Decl. ¶ 18.  The same day, Saunders' office emailed Plaintiffs' counsel that an answer to the complaint had been drafted but "the e-filing had been delayed slightly due to our physical office relocation."  Dkt. 35-9.  Saunders' office also relayed that by November 20, 2023, a time to meet and confer that week would be provided.  *Id*.  But Plaintiffs' counsel did not receive a response from Saunders' office to schedule the conference.  Dkt. 35-3, Declaration of Charles W. Cox ¶¶ 15-16.

   It is unclear from Cox's declaration whether Plaintiffs warned Saunders that a Request for Clerk's Entry of Default would be filed unless Monarcas' promised answer was filed, but on November 21, 2023, Plaintiffs filed and served the Request for Clerk's Entry of Default on Saunders.  *Id*. ¶¶ 17-18.  Plaintiffs' Request for Clerk's Entry of Default was never forwarded from Saunders or his office to Monarcas.  Vazquez Decl. ¶ 19.  At the initial meeting with Saunders, Vazquez relayed that his nine-year-old daughter was being treated for medulloblastoma, a malignant brain tumor, and that he trusted Saunders to defend him in the litigation and keep him updated.  *Id*. ¶ 7.  Vasili relayed that his mother also suffered from a brain tumor, but she had recovered and empathized with Vazquez.  *Id*. ¶ 8.  Vazquez also communicated that the cancer and treatment had been hard on his family and he and his wife were separated, but that the lawsuit was important to him and to immediately communicate if anything was needed.  *Id*. ¶ 9. Saunders and his office assured Vazquez should focus on his daughter and family and rest assured because they had the expertise to handle the lawsuit.  *Id*. ¶ 10.

On or about December 13, 2023, Saunders' office informed Vazquez by telephone that the Answer to the Complaint was filed and the case was proceeding normally, but did not inform him that the Answer was filed late and after the Entry of Default by Clerk. *Id*. ¶ 20, Ex. D. The Court ordered Saunders to file a notice of interested parties by December 25, 2023, but Saunders ignored the Court's order. Dkt. 34. On December 22, 2023, Plaintiffs filed a motion for default judgment. Dkt. 35. Saunders did not inform Monarcas of the motion for default judgment and failed to oppose same. Vazquez Decl. ¶ 21. On February 5, 2024, the Court struck Monarcas' Answer that was filed on December 13, 2023, because it was filed after the Clerk's November 29, 2023, entry of default. Dkt. 39. Saunders did not inform Monarcas that the Court struck the filed Answer or provide a strategy to remedy same. Vazquez Decl. ¶ 22. Thus, the Court granted the motion for default judgment and awarded $3,060,000 in damages and entered a permanent injunction on February 26, 2024. Dkt. 41. Saunders' office did not inform Monarcas of the monetary damages award, but did inform Monarcas by telephone that it had to stop selling the Electrolit products, but the case was progressing normally. Vazquez Decl. ¶ 23.

On March 11, 2024, Plaintiffs filed a motion for attorneys' fees and application to tax costs, which was not only unopposed by Saunders, but he also failed to respond to counsel's email correspondence requesting to meet and confer regarding the anticipated motion. Dkt. 43-2, Cox Decl. ¶¶ 10-11. Saunders did not inform Monarcas of the same resulting in a substantial fee award of $259,540.00. Dkt. 92; Vazquez Decl. ¶ 24.

In April 2024, Vazquez and Lopez were substitute-served with orders to appear for debtor's examinations on May 21, 2024. Dkts. 62 and 64. The documents were uploaded to Saunders' www.mycase.com portal and Vazquez communicated with Marvin Powell, Director of Litigation, at Saunders' office. Vazquez Decl. ¶ 25. Powell mislead Vazquez into believing that he and Lopez did not need to appear on May 21, 2024, because it was a hearing for the attorneys. *Id*. ¶ 26. Powell stated that the Court had mistakenly struck Monarcas' Answer and Saunders was preparing the motion to vacate

the default and dismiss the case. *Id.* ¶ 27. In May 2024, Vazquez and Lopez were served with the Court's orders to appear for debtor's exams on June 25, 2024. Dkts. 79, 80. Once again the documents were uploaded to the www.mycase.com portal and Vazquez spoke with Powell by phone. Vazquez Decl. ¶ 28. Powell again mislead Vazquez by telling him they did not need to appear, that Saunders' team would handle it, and on May 30 or 31 directed Vazquez to the portal to see Saunders' filed motion to vacate default and dismiss. *Id.* ¶ 29.

On June 28, 2024, Lopez and Vazquez drove to Saunders' office in Newport Beach to understand the status of the case. *Id.* ¶ 30. Once again, Powell mislead them into believing that the default and judgment were a mistake based on the Answer being stricken—without disclosing it was because of Saunders' gross negligence—and that Saunders' pending motion to vacate the default and dismiss the case would prevail. *Id.* ¶ 31. Powell also concealed Saunders' failure to file a reply in support of the motion to vacate the judgment and dismiss the case. *Id.* ¶ 32. Powell sent a follow-up email documenting the misrepresentations with the audacity of demanding payment of $7,700 for the motion to vacate the default caused by Saunders' gross negligence in failing to timely answer the complaint. *Id.* ¶ 33, Ex. E.

On or about July 18, 2024, Lopez and Vazquez were served with the Honorable Brianna Fuller Mircheff's orders rescheduling examinations to August 15, 2024. Dkts. 96, 97, 98. On July 24, 2024, Vazquez emailed Powell asking for an explanation of the orders received. *Id.* ¶ 34, Ex. F. Powell again misled Vazquez into believing that it was a normal deposition process where Plaintiffs' counsel had requested document production, and he would be asked questions about them. *Id.* ¶ 35. On August 14, 2024, Vazquez again emailed Powell asking what would happen on August 15, and Powell responded that he was reviewing the documents and "all look well so far." *Id.* ¶ 36, Ex. G. Powell also lied that "Timaiah Smith is the attorney from our office who will be there with you," but she was an independent contractor that had no knowledge of the case or the documents. *Id.* ¶ 37.

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

On August 16, 2024, this Court ordered the parties to submit a status report regarding compliance with the permanent injunction.  Dkt. 107.  Saunders did not notify Monarcas of the Court's order or seek information to complete Monarcas' portion of the joint report.  *Id*. ¶ 38.  On August 23, 2024, Plaintiffs' counsel forwarded a draft of the joint status report to Saunders' office and Powell responded that they were "finalizing [their] contributions to the joint report" and would provide Monarcas' portion by "mid-day" on August 29, 2024.  Dkt. 112-1, Samantha K. Burdick Decl. ¶¶ 3-5, Ex. B.  Instead, Saunders filed an improper substitution of counsel at 5:20 p.m. for non-attorney Vazquez to represent Monarcas.  *Id*., Dkt. 111.

Judge Mircheff ordered Saunders to personally appear at the September 18, 2024, continued debtor examination, but he failed to appear and instead sent independent contractor Ms. Smith again.  Dkt. 120 at 3:17-4:14.  After the examination and the Judge's and counsel's discussions, Monarcas became aware that it needed to produce additional documents.  *Id*. ¶¶ 39-40, Ex. H.  On October 3, 2024, Vazquez emailed Powell again for a list of documents that Monarcas needed to produce, which email went unanswered.  *Id*. ¶ 41, Ex. I.

After receiving no responses from Saunders' office, Monarcas met with two attorneys and settled on hiring William A. Romaine and his firm Romaine Lokhandwala Law Group, LLP.  *Id*. ¶ 43, Ex. J.  Romaine held himself out as an expert in trademark law and federal litigation.  *Id*. ¶ 44.  He went through the docket and explained all of Saunders' wrongdoings.  *Id*. ¶ 45.  Romaine stated that he would attend the mediation scheduled for November 14, 2024, but the main purpose of his retention would be to immediately "prepare, file, and advocate on behalf of Client a motion to set aside a judgment entered against Client [in this Court]."  *Id*. ¶ 46, Ex. J, Section 4.

Romaine's representation began inauspiciously because he went to Judge Fischer's courtroom instead of Judge Mircheff's on November 14, 2024.  *Id*. ¶¶ 47-48, Exs. K and L.  Judge Mircheff issued an order for further settlement conference on December 9, 2024, which the parties attended.  Dkts. 128, 133.  After the parties were unable to settle

and because of the inflated number Plaintiffs sought, Romaine again promised Monarcas he would be filing the motion to set aside the default by the end of the year. *Id*. ¶ 49. Monarcas did not receive a copy of the motion by the end of 2024 and called Romaine to follow up, and he promised that he would file it by January 3, 2025. *Id*. ¶ 50. Having not heard from Romaine or his office after several messages and emails, Vazquez and Lopez drove to his office on January 20, 2025, and were told that he had passed away. *Id*. ¶ 51.

Quickly after finding out about Romaine's passing, Monarcas interviewed several firms and engaged Milord Law Group, PC on January 31, 2025. *Id*. ¶ 53. Counsel has emailed and spoken with Saunders' office to obtain Monarcas' file to review the extent of Saunders' conduct, but Saunders has refused to turn over Monarcas' files and only transferred incomplete publicly available court filings which are not properly kept. Keshishian Decl. ¶ 3.

## III.    Procedural Posture

This case was closed on February 26, 2024, when the Court granted Plaintiffs' motion for default judgment and permanent injunction and monetary damages in the amount of $3,060,000. Dkt. 41. The Court subsequently granted Plaintiffs' attorneys' fees in the amount of $259,540.00. Dkt. 92. Monarcas has not appealed the Court's judgment because Saunders failed to oppose the motion for default judgment or the motion for attorneys' fees with which to create an appellate record.

## IV.    Rule 60(b) affords Monarcas the relief it seeks.

In relevant part for purposes of this Motion, Federal Rule of Civil Procedure 60(b) states, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; [or] (6) any other reason that justifies relief." Rule 55(c) also allows the Court to set aside a default or a default judgment for good cause. Fed. R. Civ. P. 55(c).

Rule 60(b) "is remedial in nature and thus must be liberally applied." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002). Rule 60(b) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986).

The Ninth Circuit has repeatedly expressed its strong preference that cases be decided on the merits. *See, e.g., Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam); *U.S. v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.") (citing *Falk*, additional citations omitted). On a Rule 60(b) motion, the court accepts the movant's allegations as true. *Falk*, 739 F.2d at 464.

Courts consider the following factors to vacate either a default or default judgment: (1) if the defendant engaged in culpable conduct that led to the default; (2) if the defendant has a meritorious defense; and (3) if setting aside the default would prejudice the plaintiff. *Mesle*, 615 F.3d at 1091; *Atari Interactive, Inc. v. Rageon, Inc.*, No. 19-CV-10806-DSF-MAAX, 2020 WL 5802376, at *3 (C.D. Cal. Aug. 25, 2020). "A motion under Rule 60(b) must be made within a reasonable time—and for [60(b)] reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

## A.    Monarcas was not culpable because of Saunders' gross negligence, deceit, and abandonment.

"Culpable conduct occurs when a defendant 'has received actual or constructive notice of the filing of the action and intentionally failed to answer.'" *Atari Interactive*, 2020 WL 5802376, at *3 (citing *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)). Within a week of service of the complaint, Monarcas hired Saunders to defend the case and agreed to his strategy of filing a "demurrer" to dismiss the case. Vazquez Decl. ¶ 4, Ex. A. Saunders' office contacted Plaintiffs' counsel and

1   received an extension of time to respond to the complaint, but failed to draft or file said

2   stipulation.  Dkt. 35-5, Cox Decl. Ex. B.  It is unclear from the record if Plaintiffs warned

3   Saunders that Request for Default would be sought, but Plaintiffs filed same despite

4   Saunders' request for an extension.  Dkt. 35.  Saunders did file a late answer, which the

5   Court struck because of the earlier entry of default.  Dkts. 32, 39.  Saunders then did not

6   oppose the motion for entry of default judgment or the motion for attorneys' fees, misled

7   Monarcas that the case was proceeding normally, and had the temerity to charge

8   Monarcas $7,700 to file a defective motion to set aside the default caused by Saunders'

9   own gross negligence of failing to timely respond to the complaint.  Vazquez Decl. ¶¶ 16,

10  21, 24, 33, and 35, Ex. E.

11      "[W]here the client has demonstrated gross negligence on the part of his counsel, a

12  ... judgment against the client may be set aside pursuant to Rule 60(b)(6)."  *Cmty. Dental*

13  *Servs.*, 282 F.3d at 1169.  "[C]onduct on the part of a client's alleged representative that

14  results in the client's receiving practically no representation at all clearly constitutes gross

15  negligence, and vitiat[es] the agency relationship that underlies our general policy of

16  attributing to the client the acts of his attorney."  *Id*. at 1171.

17      Saunders' behavior here was more egregious than counsel's behavior in

18  *Community Dental* and *Atari Interactive* where defaults and default judgments were

19  vacated.  In *Community Dental*, counsel failed to answer the complaint and failed to file a

20  stipulation of time to answer but represented to the client that the case was going well.

21  *Cmty. Dental Servs.*, 282 F.3d at 1170-71.  The Ninth Circuit reversed the district court

22  and vacated the default and default judgment because "conduct on the part of a client's

23  alleged representative that results in the client's receiving practically no representation at

24  all clearly constitutes gross negligence" that requires vacatur under Rule 60(b).  *Id*. at

25  1171.  In *Atari Interactive*, this Court found that counsel's failure to timely file a

26  response and inform the client of the missed deadline, failure to take actions to rectify the

27  situation, evading questions, assurances that deadlines were being met, and failure to

28  inform the client of additional missed deadlines, constituted gross negligence and

-9-

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

abdication of duties as counsel to set aside the default judgment.  *Atari Interactive*, 2020 WL 5802376, at *4.  In addition to the misconduct found sufficient in *Community Dental* and *Atari Interactive*, Saunders misled Monarcas by charging extra to file a late and defective motion for relief from default and concealing the fact that Saunders' gross negligence was the cause of the default in the first place.  He also misled Monarcas that the additional payment would cover the motion to dismiss the case in its entirety.  Saunders also ignored court orders, including failing to appear at the September 18, 2024, debtor examination despite Judge Mircheff's express order that he appear instead of sending an independent contractor. Dkt.. 120 at 3:17-4:14..  Monarcas was further betrayed by Romaine who was engaged specifically to file a motion to set aside the default judgment, but failed to do so as promised before passing away.  Vazquez Decl. ¶ 52, Ex. J.  "Therefore, because the Court finds that Defendant did not intentionally fail to respond to the complaint, default was not the result of culpable conduct."  *Atari Interactive*, 2020 WL 5802376, at *4.

### B.    Monarcas has meritorious defenses.

"[T]he burden on a party seeking to vacate a default judgment is not extraordinarily heavy.  All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense . . . ."  *Mesle*, 615 F.3d at 1094.  The applicable standard is not a likelihood of success.  *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015).  "The movant must only 'demonstrate facts or law that shows the trial court that 'a sufficient defense is assertible.'"  *Atari Interactive*, 2020 WL 5802376, at *4 (citation omitted).

Monarcas has a meritorious defense to Plaintiffs' accusations of trademark infringement for Monarcas' importation and sales of genuine and authentic goods from Mexico manufactured by Plaintiffs.  In *Summit*, plaintiff sued defendants for trademark infringement to stop the defendant's U.S. sales of genuine laser equipment that were manufactured for ***foreign use only***.  *Summit Tech., Inc. v. High-Line Med. Instruments*

-10-

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**

*Co.*, 922 F. Supp. 299, 302 (C.D. Cal. 1996). Like Plaintiffs here, Summit argued that the sale of foreign Summit equipment was not "genuine" because they differed "materially" from the U.S. version, including lacking FDA approval and differing quality controls. *Id*. The district court dismissed Summit's trademark claims under Fed. R. Civ. P. 12(b)(6), finding that despite the differences between the foreign and domestic equipment, the "essential fact remains that based on the allegations in the Complaint, the re-imported [foreign] laser systems are Summit products, manufactured and sold by Summit itself. Thus, consumers will not be confused as to whether the re-imported laser systems are 'Summit' systems-they are. There is no 'likelihood of confusion as to the source of the goods,' which, based on Plaintiff's allegations, is Summit." *Id*. at 308 (citations omitted). Under the First Sale Doctrine, Summit could not "use trademark law to control the downstream distribution of products that Summit *itself* manufactured and sold." *Id*. at 309 (emphasis in original).

Here, like *Summit*, the Plaintiffs are the source of Monarcas' products, bearing the same, genuine trademarks, and they are not altered in any way between manufacture and sale in the U.S. Vazquez Decl. ¶ 54. Thus, all the accused products are genuine products and "differences" between the genuine foreign and U.S. versions of the products are irrelevant. *Summit Tech.*, 922 F.Supp. at 309 ("the fact that Summit sold *different* goods in different markets for different prices does not render the 'first sale' rule inapplicable . . . Simply put, if Summit manufactures laser systems which differ from those designed for use in the United States, and sells them in foreign markets, Summit does so at its own risk"). Because Summit was the source of the "genuine" products, the court held that there "is no danger that consumers are likely to be confused as to the *source* of the Summit laser systems - the main concern of trademark law." *Id*. at 310.

### 1. Monarcas did not act willfully or intentionally and this is not an exceptional case entitling Plaintiffs to attorneys' fees.

Unlike *Summit*, Monarcas obtained FDA approval to sell genuine Mexican

versions of Electrolit products in the U.S.  Vazquez Decl. ¶ 55, Ex. M.  Monarcas did not intend to mislead consumers because the Electrolit products were labelled by the FDA with the proper notices of being the Mexican version.  *Id*. ¶ 56, Ex. N.  Plaintiffs' motion for costs and attorneys' fees was not opposed and the Court adopted Plaintiffs' assertion that the case was exceptional.  Dkt. 40, p. 6.

But this case was not "exceptional" within the meaning established by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).  After *Octane Fitness*, the Ninth Circuit directs its lower courts to look at the totality of the circumstances when ruling on a Lanham Act fee request.  *Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181, 120 U.S.P.Q.2d 1386 (9th Cir. 2016) (en banc).  Thus, district courts may consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" in assessing the totality of circumstances.  *Octane*, 134 S. Ct. at 1756 n. 6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

The Court relied on Plaintiffs' assertion that there was an offer to sell enjoined products, but as Plaintiffs' witness declares, Monarcas had moved and he had to go to the new location.  Dkt. 85-6, Declaration of Luis Gil ¶ 3.  Plaintiffs' private investigator spoke with warehouse employees during the recent move and was provided price sheets, but the computer system would not allow the sale of enjoined products.  Vazquez Decl. ¶ 57.  The investigator declares that no sales were made only a price sheet provided.  Dkt. 85-4, Declaration of Ruben Iglesias ¶ 4.  Also, the Court—without knowledge of Saunders' gross negligence and abandonment of the defense—determined that the case was exceptional because "[d]espite Plaintiffs' documentation of Defendant's infringement and despite receiving clear notice of Plaintiffs' intent to litigate the matter, Defendant has failed to cooperate and shows no interest in cooperating in the future."  Dkt. 40, p. 6.  Monarcas was not unaware of Saunders' misconduct and gross negligence, but it always wanted to defend itself and provide its evidence of good faith conduct and

cooperate with the Court's orders. *Sazerac Brands, LLC v. Allocated Liquor LLC*, No. 22-CV-08467-ODW-SKX, 2023 WL 4315542, at *6 (C.D. Cal. July 3, 2023) (denying attorneys' fees because plaintiff did not establish case was exceptional after default judgment despite sales of counterfeit goods).

### 2. Plaintiffs' calculation of $3,060,000 in damages is incorrect and based on pure speculation.

Saunders abandoned Monarcas by failing to oppose Plaintiffs' motion for default judgment and the Court was only privy to Plaintiffs' inflated and inaccurate calculations. Relying on Caridad Ochoa's speculative declaration, the Court adopted his unfounded $3,060,000 in damages estimate. First, he presented no evidence that the 1,000 pallets were comprised of only Electrolit products. Dkt. 35-2, Ochoa Decl. ¶ 6. Monarcas sells a variety of goods and the 1,000 pallets contained other products. Vazquez Decl. ¶ 58. The total number of Electrolit products at issue are 291,587 boxes of 12 Electrolit products. *Id*. ¶ 59. Second, Ochoa, based on his "belief that 1,000 pallets comprise around 1,020,000 bottles," applied the retail price of $3.00 per bottle—when Monarcas is not a retailer and the retail price does not apply. Ochoa Decl. ¶ 7. Ochoa's $3.00 per bottle price is betrayed by Plaintiffs' own private investigator's evidence showing that the Monarcas' wholesale price is $16.00 for 12 pieces, or $1.33 per bottle. Dkt 85-5, Iglesias Decl., Ex. A p. 8. Monarcas sold a total of 291,587 boxes of 12 Electrolit products for a gross sales amount of $4,329,911.50 minus $3,632,434.84 in cost of goods, resulting in a gross profit of $697,476.66. Vazquez Decl. ¶ 59, Ex. O. Saunders' abandonment of Monarcas prevented evidence in opposition to Plaintiffs' motion for default judgment.

Thus, Monarcas has a meritorious defense to the infringement claims and to the alleged damages amount.

### C. Plaintiffs will not be prejudiced by setting aside the default judgment.

"To be prejudicial, the setting aside of the judgment must result in greater harm

than simply delaying resolution of the case.  It must hinder the plaintiff's ability to pursue the claim.  Being forced to litigate on the merits does not meet this standard.  Indeed, an entry of default judgment gives the plaintiff something of a windfall by sparing [the plaintiff] from litigating the merits of [the] claim." *Atari Interactive*, 2020 WL 5802376, at *5 (internal citations and quotation marks omitted).

Plaintiffs cannot show any prejudice merely because Saunders abandoned Monarcas.  Indeed, Plaintiffs' new lawsuit filed against Monarcas' principals in their individual capacities is pending and defendants have answered the complaint.  *See Sueros & Bebidas Rehidratantes, S.A. de C.V. et al v. Lopez et al.*, 2:24CV10102 (C.D. Cal. 2024).  Thus, Plaintiffs will not be prejudiced in having to litigate both matters on the merits.

### D.    This application is timely.

"A motion for relief from default judgment "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." *Atari Interactive*, 2020 WL 5802376, at *6 (citing Fed. R. Civ. P. 60(c)).  In determining if a motion is timely, the court must take into account whether the movant was in *reasonable control of the circumstances* that caused the delay.  *See Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996).  "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981).

After learning of Saunders' misconduct hidden by his deceit in September 2024, Monarcas hired Romaine by October 29, 2024, to file a motion to set aside the default and default judgment.  Vazquez Decl. ¶ 42.  Romaine did not file the motion instead attending mediation in November 2024.  *Id.* ¶¶ 48 and 52.  Then he promised that the motion would be filed before the end of the year and then promised January 3, 2025.  *Id.*

-14-

¶ 50.  After learning Romaine passed away in late January 2025, Monarcas hired current counsel to file the motion within three weeks.  *Id*. ¶ 53.  Thus, the delay is reasonable under the circumstances of gross negligence by Saunders and Romaine.

## V.    Conclusion

The State Bar had the opportunity to prevent Saunders' gross negligence by disbarring him in 2020 based on his abandonment of former clients.  But he was allowed to continue to practice law to the detriment of Monarcas.  The Court should grant the motion to set aside the default and default judgment because Monarcas was victimized by Saunders' gross negligence in failing to timely respond to the complaint and deceiving Monarcas into believing that the case was progressing normally.  Monarcas has a meritorious defense, including the inaccuracy of Plaintiffs' damages calculations and evidence that this case is not exceptional to support fee shifting.

Dated: February 25, 2025

**MILORD LAW GROUP, P.C.**

By: /s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Defendant
MONARCAS CANDIES

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM JUDGMENT**